UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      v.

RAUL RAMIREZ-VARGAS,

                Defendant.

**DECISION AND ORDER**
13-CR-83S (8)

## I. INTRODUCTION

Presently before this Court is Defendant Raul Ramirez-Vargas's Motion for Compassionate Release, which the government opposes. See 18 U.S.C. § 3582 (c)(1)(A). For the reasons discussed below, Ramirez-Vargas's motion is denied.

## II. BACKGROUND

On December 21, 2016, Ramirez-Vargas pleaded guilty to conspiring to possess with intent to distribute, and to distribute, 1 kilogram or more of heroin, in violation of 21 U.S.C. § 846. (Docket Nos. 457, 461.) Approximately four months later, on April 19, 2017, this Court sentenced Ramirez-Vargas to 130 months' imprisonment, 5 years' supervised release, a $100 special assessment, and no fine, fees or costs. (Docket Nos. 554, 556.) Ramirez-Vargas is presently serving his sentence at FCI Miami, with a release date of May 20, 2022.[1]

On September 8, 2020, Ramirez-Vargas filed a pro se motion for compassionate release under 18 U.S.C. § 3582 (c)(1)(A)(i). (Docket No. 708.) The Federal Public Defender thereafter supplemented Ramirez-Vargas's motion and filed a reply brief on his

---

[1] See https://www.bop.gov/inmateloc/ (last visited November 2, 2020).

behalf.     (Docket No. 721.)     In his submissions, Ramirez-Vargas contends that compassionate release is warranted because he is at heightened risk of severe illness from COVID-19 due to his medical conditions.  The government opposes the relief sought. (Docket No. 717.)

### III. DISCUSSION

### A.     Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)(i)

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). One such statute is 18 U.S.C. § 3582 (c)(1)(A)(i) which, as amended by the First Step Act of 2018,[2] provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence

---

[2] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release after proper exhaustion.  See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018).  The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions.  See, e.g., United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *1 n.1 (S.D.N.Y. Feb. 4, 2020) (explaining the First Step Act amendment); United States v. Gotti, 433 F. Supp. 3d 613, 614-15 (S.D.N.Y. 2020) (same).

reduction under the statute. See United States v. Ebbers, 432 F. Supp. 3d 421, 426-27 (S.D.N.Y. 2020). A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions. See 18 U.S.C. § 3582 (c)(1)(A)(i); United States v. Perez, 451 F. Supp. 3d 288, 291 (S.D.N.Y. 2020). If the court finds, after consideration of the applicable 18 U.S.C. § 3553 (a) factors, that the defendant has met this burden, it may reduce the defendant's sentence under the statute. See 18 U.S.C. § 3582 (c)(1)(A)(i); see also United States v. Gileno, 448 F. Supp. 3d 183, 185 (D. Conn. 2020).

The statutory exhaustion requirement is mandatory and "must be strictly enforced." United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004)); United States v. Cassidy, 17-CR-116S, 2020 WL 1969303, at *3-8 (W.D.N.Y. Apr. 24, 2020) (finding exhaustion mandatory). The exhaustion requirement is met when the earlier of two circumstances occurs: (1) the defendant fully exhausts all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, [3] or (2) 30 days lapse from the date the warden of the

---

[3] The Scparta court explained the administrative process before the Bureau of Prisons as follows:

> First, an inmate must request the warden of her facility to file a compassionate-release motion on her behalf. 28 C.F.R. § 571.61 (a). Second, if the warden denies the prisoner's request, she has 20 days to appeal to the BOP's Regional Director. Id. § 571.63 (a) (providing that denials of compassionate-release requests are governed by the BOP's general Administrative Remedy Program, contained in 28 C.F.R. §§ 542.10-542.19); id. § 542.15 (a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the

defendant's facility receives the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

Congress delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A)(i).  See 28 U.S.C. § 994 (t).  The Commission, in turn, promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582 (c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines.  The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction:  "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons".  See U.S.S.G. § 1B1.13.

At issue here are the "Medical Condition of the Defendant" and "Other Reasons" examples.  The "Medical Condition of the Defendant" example provides as follows:

> Medical Condition of the Defendant—
>
> (i)     The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease and advanced dementia.
>
> (ii)    The defendant is—
>
> (I)     suffering from a serious physical or medical

_____

date the Warden signed the response.").  Third, if the Regional Director denies the prisoner's request, she then has 30 days to appeal to the BOP General Counsel.  Id. § 542.15 (a).  A decision from the General Counsel is the final step in the BOP's Administrative Remedy Program, id., and therefore "constitutes a final administrative decision," id. § 571.63 (b).

United States v. Scparta, 18-cr-578 (AJN), 2020 WL 1910481, at *7 (S.D.N.Y. Apr. 20, 2020).

                                                  condition,

        (II)     suffering from a serious functional or cognitive impairment, or

        (III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 comment n. 1 (A).

The "Other Reasons" example is a catch-all provision encompassing "an extraordinary and compelling reason other than, or in combination with, the [other] reasons described."[4] Id. n. 1 (D).

As it relates to the requirement that a sentence reduction be consistent with the applicable Sentencing Guidelines provisions, U.S.S.G. § 1B1.13 is once again the relevant provision. It provides that a court may reduce a sentence if, after consideration of the 18 U.S.C. § 3553 (a) factors, it determines that

        (1) (A) extraordinary and compelling reasons warrant the reduction; or

        (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559 (c) for the

---

[4] The Bureau of Prisons has implemented a Program Statement to guide its own implementation of 18 U.S.C. § 3582 (c)(1)(A). See Bureau of Prisons Program Statement 5050.50, eff. January 17, 2019 (available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query# (last visited November 2, 2020)). But this Program Statement does not constrain this Court's consideration of what qualifies as extraordinary and compelling reasons for compassionate release. As the Second Circuit recently held, "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." United States v. Brooker, 976 F. 3d 228, 234-37 (2d Cir. 2020); see also United States v. Marks, 455 F. Supp. 3d 17, 22-25 (W.D.N.Y. 2020) (finding that post-First Step Act, district courts are no longer bound by the specific categories warranting sentence reduction identified by the Sentencing Commission in U.S.S.G. § 1B1.13, including affording any deference to the Director for purposes of U.S.S.G. § 1B1.13 comment n. 1 (D) ("Other Reasons")).

offense or offenses for which the defendant is
imprisoned;

(2) the defendant is not a danger to the safety of any other
person or to the community, as provided in 18 U.S.C. §
3142 (g); and

(3) the reduction is consistent with this policy statement.

See U.S.S.G. § 1B1.13.

Finally, district courts have broad discretion in deciding whether to grant or deny

motions for sentence reduction.  See Gileno, 448 F. Supp. 3d at 186.

**B.     Ramirez-Vargas's Motion for Compassionate Release**

**1.  Exhaustion of Administrative Rights**

As indicated above, 18 U.S.C. § 3582 (c)(1)(A) contains a threshold exhaustion

requirement.  To satisfy this requirement, a defendant must demonstrate that either (1)

he or she fully exhausted all administrative rights to appeal a failure of the Bureau of

Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf,

or (2) 30 days have lapsed from the date the warden of the defendant's facility received

the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582

(c)(1)(A).

For reasons discussed at length in two previous decisions (fully incorporated

herein), this Court has found that the statutory exhaustion requirement is mandatory and

cannot be excused.  See Cassidy, 2020 WL 1969303, at *3-8; United States v. Schultz,

454 F. Supp. 3d 217, 220-223 (W.D.N.Y. 2020); accord United States v. Montanez, 458

F. Supp. 3d 146, 149-160 (W.D.N.Y. 2020) (finding § 3582 (c)(1)(A)'s exhaustion

requirement mandatory).

Here, Ramirez-Vargas submitted his request for compassionate release to the

warden of FCI Miami on May 6, 2020.  (Docket No. 717-1.)  The warden denied his request on July 14, 2020.  (Docket No. 717-2.)  Thirty days having lapsed since May 6, 2020, this Court finds that Ramirez-Vargas has satisfied the statutory exhaustion requirement, and the government does not contend otherwise.

### 2.  Extraordinary and Compelling Reasons for Sentence Reduction

Ramirez-Vargas has served approximately 81 months of his 130-month sentence. He is 47 years old and suffers from multiple documented medical conditions, including Types I and II diabetes, asthma-like condition related to a past gunshot wound, sleep apnea, and Hepatitis C, all of which he argues makes him highly susceptible to severe illness from COVID-19.  (Compassionate Release Motion, Docket No. 708, pp. 3, 4; Medical Records, Docket No. 724.)   If released, Ramirez-Vargas plans to live with his wife in Niagara Falls, N.Y.  (Supplemental Memorandum and Reply,  Docket No. 721, p. 10.)

The government concedes that Ramirez-Vargas's diabetes condition constitutes an extraordinary and compelling reason for a sentence reduction, and it does not dispute the existence of his other conditions.   In particular, the government has reviewed Ramirez-Vargas's medical records from the Bureau of Prisons, which confirm his diabetes diagnosis. (Government Opposition, Docket No. 717, pp. 7-8.)  The government agrees that Ramirez-Vargas's diabetes alone is severe enough that it substantially diminishes his ability to provide self-care in a prison environment and is a condition from which he is not expected to recover, thus meeting the requirements for an "extraordinary and compelling reason" under U.S.S.G. § 1B1.13 comment n. 1 (A)(ii)(I).  (Government Opposition, pp. 7-8.)  Notably, however, Ramirez-Vargas has made no showing that the

Bureau of Prisons is unable to adequately treat his conditions.

As for the "Other Reasons" section of U.S.S.G. § 1B1.13 comment n. 1 (D), which provides for relief if there exist extraordinary and compelling reasons for sentence reduction other than (or in combination with) what is specifically prescribed, Ramirez-Vargas argues that his medical conditions make him highly susceptible to severe illness from COVID-19.  See United States v. Resnick, 451 F. Supp. 3d 262, 270 (S.D.N.Y. 2020) (considering compassionate-release request based on a defendant's high susceptibility to COVID-19 under the "catch-all" provision of U.S.S.G. § 1B1.13 comment n. 1 (D)).

COVID-19 is the sweeping, potentially deadly, disease at the center of an ongoing worldwide pandemic that required the President of the United States to declare a national emergency on March 13, 2020.  See Proclamation No. 9994, 85 Fed. Reg. 15,337-38 (March 13, 2020).   The Centers for Disease Control and Prevention ("CDC") has determined that individuals with certain underlying medical conditions, particularly if not well controlled, are at high risk for severe illness from COVID-19.[5]  See Jones v. Wolf, No. 20-CV-361, 2020 WL 1643857, at *8 (W.D.N.Y. Apr. 2, 2020) (taking judicial notice that "for people of advanced age, with underlying health problems, or both, COVID-19 causes severe medical conditions and has increased lethality") (quoting Basank v. Decker, 449 F. Supp. 3d 205, 211 (S.D.N.Y. 2020)).  Those medical conditions consist of cancer, chronic kidney disease, chronic obstructive pulmonary disease (COPD), heart conditions (e.g., heart failure, coronary artery disease, cardiomyopathies), immunocompromised state from solid organ transplant, obesity (body mass index of 30-

---

[5]  See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited November 2, 2020).

39), severe obesity (body mass index greater than 40), sickle cell disease, smoking, and Type 2 diabetes mellitus.[6]  The CDC has also identified medical conditions that *might* make an individual at increased risk for severe illness from COVID-19, including asthma and Type I diabetes mellitus.[7]  Ramirez-Vargas's medical conditions thus place him in the high-risk category.

Some courts have found that inclusion in the high-risk category alone is enough to constitute an extraordinary and compelling reason for a sentence reduction, see, e.g., United States v. Zukerman, 451 F. Supp. 3d 329, 335-36 (S.D.N.Y. 2020) (collecting cases), but this Court has not.  Rather, it has found, and continues to find, that the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme.  See United States v. Stevens, 459 F. Supp. 3d 478, 486 (W.D.N.Y. 2020); Korn, 2020 WL 1808213, at *6; see also United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"); United States v. Gold, 459 F. Supp. 3d 1117,  1120 (N.D. Ill. 2020) (finding that COVID-19 does not "warrant the release of every federal prisoner with health conditions that make them more susceptible to the

---

[6]  See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited November 2, 2020).

[7]  See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited November 2, 2020).

disease"); United States v. Gagne, 451 F. Supp. 3d 230, 235 (D. Conn. 2020) (denying compassionate release where the defendant failed to show "that the [Bureau of Prisons] cannot adequately manage the [COVID-19] pandemic or treat her to a reasonable degree"); United States v. Eberhart, 448 F. Supp. 1086, 1090 (N.D. Cal. 2020) ("[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13"); United States v. Zywotko, Case No. 2:19-cr-113-FtM-60NPM, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) (denying compassionate release where "the BOP has implemented an action plan to mitigate the effect of COVID-19 and prevent potential transmissions into and throughout its correctional facilities"); Gileno, 448 F. Supp. 3d at 188 ("Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno.").

The Bureau of Prisons has experience combatting infectious diseases and has developed and implemented a multi-point plan to battle COVID-19. Preparations began in early 2020 when the Bureau of Prisons instituted its Pandemic Influenza contingency plan, specifically modified to fight COVID-19.[8] This plan is based on guidance and directives from the World Health Organization, the CDC, and other related agencies. Under this plan, the Bureau of Prisons has implemented quarantine and isolation protocols, restricted inmate transfers, reduced overcrowding, limited group gatherings,

---

[8] See https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response (last visited November 2, 2020).

employed screening procedures, and suspended visitation and tours.[9]  These and other measures are constantly reassessed to further mitigate the exposure and spread of COVID-19 among the federal prison population.

While indications are that adherence to this plan has generally served Bureau of Prisons facilities fairly well, it appears that FCI Miami initially struggled to contain the coronavirus, with more than 150 cases and one inmate death.[10]  Nonetheless, conditions there now appear to be improving, with only four inmate and 23 staff cases.[11]  Cf. United States v. Little, Case No. 18-60013-CR-COHN, 2020 WL 5902484, at *3 (S.D. Fla. Sept. 4, 2020) (reporting 44 inmate cases at FCI Miami as of September 4, 2020); United States v. Gutierrez, No. 3:16-cr-114 (VAB), 2020 WL 4435246, at *4 (D. Conn. Aug. 3, 2020) (reporting 95 inmate cases at FCI Miami as of August 3, 2020).

Consequently, although Ramirez-Vargas has demonstrated (and the government concedes) that he falls firmly into the high-risk group, he has made no showing that FCI Miami's plan and efforts to combat COVID-19 are inadequate or that the facility is unable to adequately treat him if he falls ill.  To the contrary, it appears that FCI Miami is gaining traction against the disease.  Thus, Ramirez-Vargas fails to demonstrate an extraordinary and compelling reason for a sentence reduction under U.S.S.G. § 1B1.13 comment n. 1 (D) based on COVID-19.  See United States v. Quinones, 13-CR-83S (1), 2020 WL 4529365, at *5 (W.D.N.Y. Aug. 6, 2020) (finding no extraordinary or compelling reasons for compassionate release for high-risk defendant in facility with 53 inmate cases); United

---

[9] See https://www.bop.gov/coronavirus/covid19_status.jsp (last visited November 2, 2020).

[10] See https://www.bop.gov/coronavirus/ (last visited November 2, 2020).

[11] See https://www.bop.gov/coronavirus/ (last visited November 2, 2020).

11

States v. Robinson, Case No. 17-cr-318 (SRN/DTS), 2020 WL 4463363, at *7 (D. Minn. Aug. 4, 2020) (finding that the heightened risk of contracting COVID-19 at facility with numerous cases does not automatically justify compassionate release); see also Korn, 2020 WL 1808213, at *6-8 (denying compassionate release to defendant who failed to show inadequacy in Bureau of Prisons plan or ability to treat him).

### 3.  Consideration of the § 3553 (a) Factors

Notwithstanding Ramirez-Vargas's demonstration of "extraordinary and compelling" reasons qualifying him for compassionate release under U.S.S.G. § 1B1.13 comment n. 1 (A)(ii)(I), this Court finds that consideration of the § 3553 (a) factors outweighs those reasons, and that a reduction would undermine Ramirez-Vargas's original sentence.   See 18 U.S.C. § 3582 (c)(1)(A) (requiring consideration of the applicable § 3553 (a) factors); see also Ebbers, 432 F. Supp. 3d at 430-31.  The § 3553 (a) factors include, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities.  See 18 U.S.C. § 3553 (a).

Ramirez-Vargas was a member of the Loiza Boys, a violent gang responsible for the distribution of large quantities of heroin and cocaine in Buffalo, N.Y.  (Presentence Report, ¶¶ 9, 25.)  Ramirez-Vargas's stepson, Oneil Quinones, led the gang, and another of his stepsons, Oscar Romero, was a member.  (Id. ¶ 25.)  Ramirez-Vargas served as a runner for Quinones and was present during several drug transactions.  (Id.)  He also generally facilitated the purchase and sale of heroin in bundle quantities.  (Id. ¶ 29.)  In

November 2012, for example, law enforcement encountered Ramirez-Vargas with 68 glassine envelopes containing heroin.  (Id.)  In all, Ramirez-Vargas admitted that his relevant conduct included between one and three kilograms of heroin.  (Id. ¶ 30.)

For this serious criminal activity, this Court imposed a 130-month sentence of imprisonment.  That is a fair, just, and reasonable sentence which, in this Court's view, would be undermined by a reduction to time served.  Such a reduced sentence would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from future crimes by the defendant.  See 18 U.S.C. § 3553 (a).  Such a reduction would also result in unwarranted sentencing disparities.  Id.  Accordingly, consideration of the § 3553 (a) factors outweighs any extraordinary and compelling reasons for a sentence reduction.

### 4.  Consistency of a Reduction with U.S.S.G. § 1B1.13

Finally, this Court finds that a sentence reduction is not consistent with U.S.S.G. § 1B1.13.  See 18 U.S.C. § 3582 (c)(1)(A) (requiring that any sentence reduction be consistent with applicable policy statements issued by the Sentencing Commission); U.S.S.G. § 1B1.13 (2).  This inquiry requires a determination as to whether the defendant poses a danger to the safety of any person or to the community if released.

As indicated, Ramirez-Vargas was a member of a significant drug-trafficking gang that used violence to further its drug activities.  (Presentence Report, ¶ 9.)  Ramirez-Vargas is a criminal history category VI, with a long and consistent criminal record, including multiple convictions for controlled substances offenses, unlawful discharge of a weapon, trespass, domestic violence, disorderly conduct, and multiple probation and pretrial release violations.  (Id. ¶¶ 5-7, 48-59.)  This Court therefore also finds that

13

Ramirez-Vargas poses a danger to the community if released.  See Quinones, 2020 WL 4529365, at *6 (finding member of Loiza Boys to pose danger to the community); United States v. Rivera, 13-CR-83S (6), 2020 WL 3603045, at *7 (W.D.N.Y. July 2, 2020) (same).

### IV. CONCLUSION

For all of the reasons stated above, this Court finds that compassionate release and a sentence reduction under 18 U.S.C. § 3582 (c)(1)(A)(i) is not warranted.  Ramirez-Vargas's motion will therefore be denied.

### V. ORDER

IT HEREBY IS ORDERED, that Ramirez-Vargas's Motion for Compassionate Release (Docket No. 708) is DENIED.

SO ORDERED.

Dated:      November 2, 2020
            Buffalo, New York

                                        William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge